**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**


| | | | |
|---|---|---|---|
| **JONESFILM** | | * | **CIVIL ACTION NO. 11-1994** |
| | **Plaintiff** | * | |
| | | * | **SECTION: H** |
| | | * | **JUDGE JANE TRICHE MILAZZO** |
| **VERSUS** | | * | |
| | | * | |
| | | * | **MAGISTRATE: 3** |
| **PETER HOFFMAN, ET AL** | | * | **MAG. DANIEL KNOWLES, III** |
| | **Defendants** | * | |
| | | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *


<u>**ORDER AND REASONS**</u>

The matters before the Court are a Motion to Dismiss for Lack of Personal Jurisdiction by Peter Hoffman and Seven Arts Filmed Entertainment Limited (Doc. 14); a Motion to Dismiss as a Delictual Action Brought Outside the Limitations Period by Seven Arts Pictures, Inc. (Doc. 15); and a Motion to Dismiss as a Delictual Action Brought Outside the Limitations Period by Susan H. Hoffman and Leeway Properties, Inc. (Doc. 26). For the following reasons, the Motions to Dismiss are DENIED.

**BACKGROUND**

*I. First Judgment*

In 2002, a dispute arose out of the alleged misconduct of Defendant Peter Hoffman's Company, NTTS Productions, Ltd., with respect to certain Jonesfilm motion picture rights. Jonesfilm instituted an arbitration proceeding against Defendant Peter Hoffman and his affiliate company, NTTS Productions, Ltd., before the American Film Marketing Assocation ("AFMA"). On July 20, 2004, the AFMA arbitration tribunal issued a declaration of rights in favor of Jonesfilm and a monetary award to Jonesfilm against NTTS. The order was confirmed by the Superior Court for Los Angeles County, California in December 2004. On March 18, 2005, the Los Angeles Superior Court amended its judgment to include Peter Hoffman as a Judgment Debtor in the action as the alter ego of NTTS Productions, Ltd., finding him jointly and severally liable for its obligation under the judgment. On March 14, 2006, the Civil District Court for the Parish of Orleans made the California Judgment against Peter Hoffman in the amount of $290,911.00 plus interest executory in Louisiana. This judgment was recorded on March 15, 2006 in the Orleans Parish mortgage records.

*II. Second Judgment*

In August 2005, Jonesfilm instituted an arbitration proceeding against Peter Hoffman affiliates Cinevisions ("CV"), Seven Arts Pictures, Inc. ("SAP"), Seven Arts Filmed Entertainment ("SAFE"), and Seven Arts Pictures, PLC ("PLC") before the Independent Film & Television Alliance

("IFTA"). On June 22, 2006, the IFTA arbitrator issued a monetary award and other relief in favor of Jonesfilm and against the Peter Hoffman affiliates jointly and severally. The United States District Court for the Central District of California confirmed the arbitration award on June 19, 2007. Jonesfilm registered this Order and Judgment with the United States District Court for the Eastern District of Louisiana on June 2, 2010, and recorded the judgment in the Orleans Parish mortgage records. The Second Judgment was confirmed on appeal by the United States Court of Appeals for the Ninth Circuit on February 12, 2009.

### III. Third Judgment

On February 26, 2008, the United States District Court for the Central District of California granted Jonesfilm's Motion for Contempt against Peter Hoffman, CV, SAP, SAFE, and PLC. In addition, the Court confirmed the imposition of a constructive trust and lien in the amount of $41,766.00 plus interest. Jonesfilm registered the contempt judgment with the United States District Court for the Eastern District of Louisiana and recorded this judgment in the Orleans Parish mortgage records on June 2, 2010. The Third Judgment was confirmed on appeal by the United States Court of Appeals for the Ninth Circuit on February 12, 2009.

### IV. Post-Judgment Actions

Jonesfilm alleges that Peter Hoffman, SAFE, SAP, CV, and PLC have failed to make any payments to Jonesfilm and have further failed to satisfy any other obligations imposed by these previous judgments. Jonesfilm conducted discovery which confirmed that Peter and other

Judgment Debtors have interests in Louisiana properties and, in light of their failure to pay Jonesfilm on the previous judgments, began actions in this Court to collect on and enforce its judgments. Jonesfilm subsequently filed a Complaint in the above-captioned matter against Peter Hoffman, Susan Hoffman, Leeway Properties, Inc. ("Leeway"), SAFE, and SAP.

*V. The Pending Motions*

The matters before the Court are a Motion to Dismiss for Lack of Personal Jurisdiction by Peter Hoffman and Seven Arts Filmed Entertainment Limited (Doc. 14); a Motion to Dismiss as a Delictual Action Brought Outside the Limitations Period by Seven Arts Pictures, Inc. (Doc. 15); and a Motion to Dismiss as a Delictual Action Brought Outside the Limitations Period by Susan H. Hoffman and Leeway Properties, Inc. (Doc. 26). On November 15, 2011 Jonesfilm opposed the Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 20) and SAP's Motion to Dismiss (Doc. 19). On April 2, 2012 Jonesfilm opposed Susan Hoffman and Leeway's Motion to Dismiss. (Doc. 30.) Susan Hoffman and Leeway replied to Jonesfilm opposition on April 11, 2012. (Doc. 39.)

**LAW AND ANALYSIS**

*I. Motion to Dismiss for Lack of Personal Jurisdiction*

Before the Court are Defendants Peter Hoffman and Seven Arts Filmed Entertainment Limited Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 14.) For the following reasons the Motion is denied.

A. <u>Legal Standard</u>

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the nonmoving party must only make a prima facie showing, and the court must accept as true the nonmover's allegations and resolve all factual disputes in its favor. *Guidry v. U.S. Tobacco, Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). "In determining whether personal jurisdiction exists, the trial court is not restricted to a review of the plaintiff's pleadings." *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir. 1996). The Court may consider matters outside the complaint, including affidavits, interrogatories, depositions, or any combination of the recognized methods of discovery. *Id.* (citing *Colwell Realty Investments v. Triple T. Inns of Arizona*, 785 F.2d 1330 (5th Cir.1986)).

"A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant." *Pervasive Software, Inc. v. Lexware CMBG & Co. KG*, – F.3d –, No. 11-50097, 2012 WL 2948453, at *4 (5th Cir. July 20, 2012). First, the forum state's long-arm statue must accord personal jurisdiction. *Id.* Second, the forum state's exercise of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Mink v. AAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)). Louisiana's long-arm statute extends

jurisdiction to the full limits of due process. *See* La. R.S. § 13:3201, *et seq*. Thus, the Court's inquiry must focus on whether subjecting Peter Hoffman and SAFE to suit in Louisiana would be consistent with the Fourteenth Amendment. *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 329 (1945)). The Due Process Clause protects a corporation, as it does an individual. *Int'l Shoe*, 326 U.S. at 319. Ultimately, the Due Process clause permits the exercise of personal jurisdiction over a nonresident defendant when (1) a defendant has purposefully availed itself of the benefits and projections of the forum state by establishing "minimum contacts" with the forum state; and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)(citing *Int'l Shoe*, 326 U.S. at 316).

"Minimum contacts" can be established through specific jurisdiction or general jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific personal jurisdiction exists when a defendant has purposely directed its activities, or availed itself of the privileges of conducting its activities, toward the forum state and the controversy arises out of or is related to those activities. *Burger King*, 471 U.S. at 472. General personal jurisdiction exists

when the defendant has engaged in continuous and systematic activities in the forum state, regardless of whether or not it is related to the plaintiff's cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).

"If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, we must then consider whether the 'fairness' prong of the jurisdictional inquiry is satisfied." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987)). The fairness inquiry is determined by analyzing several factors. *Asahi*, 480 U.S. at 113. These factors are: (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the judicial system's interest in obtaining an efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Bullion v. Gillespie*, 895 F.2d 213, 216 n. 5 (5th Cir. 1990) (internal citations omitted).

B. Peter Hoffman

Peter Hoffman ("Peter") asserts that Louisiana cannot properly assert either general or specific jurisdiction over him. (Doc. 14-1 at 4.) Specifically, Peter argues that his part time residence in Louisiana and services on specific films is not "continuous and systematic" activities such that this Court can properly exercise jurisdiction. (*Id.* at 6-7.) Jonesfilm argues that this Court can exercise both general and specific jurisdiction over Peter. Specifically, Jonesfilm alleges that the Court has general jurisdiction because of his presence and contacts relating to his 807

Esplanade Facility Redevelopment Project, Peter's residency and filing resident tax returns in Louisiana, Peter's ownership interests in real estate located in Louisiana, and Peter's services as a registered agent for Seven Arts Post, LLC, a Louisiana Limited Liability Company. (Doc. 20 at 13-18.) Jonesfilm further contends that the Court has specific jurisdiction because the series of transactions that have taken place with Peter and his affiliates concerning the unpaid judgments against them totaling over one million dollars. (*Id.* at 18-20.)

The evidence provided to the Court indicates that Peter has engaged in continuous and systematic contacts, both of a personal and business nature, such that it would not be unconstitutional to exercise jurisdiction over him. As such, this Court denies Defendant's motion.

"Citizenship or domicile . . . indicates a general submission to a state's powers." *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011). This reveals a circumstance, "[o]r a course of conduct, from which it is proper to infer an intention to benefit from and thus an intention to submit to the laws of the forum State." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476). Ultimately, citizenship or domicile supports "[t]he exercise of the general jurisdiction of the State's courts and allow the State to resolve both matters that originate within the State and those based on activities and events elsewhere." *Id.* (quoting *Helicopteros Nacionales de Colombia*, 466 U.S. 408 at 414, and n. 9).

Provided to the Court were several pieces of evidence that show that Peter has repeatedly held himself out as, and been considered, a resident of Louisiana. Specifically, in a 2010 letter from

Seven Arts Pictures to the Louisiana Film & Television Commission, SAP represents that one of the Louisiana producers of record for the Night of the Demons is Peter Hoffman. (Doc. 20-43, ¶ 4.) The letter affirms that Peter "has qualified as a Louisiana resident based on the amount of time spent in New Orleans for work and residency purposes and has also filed the appropriate Louisiana income tax returns." (*Id.*) Additionally, "[h]is services on this picture represent services in Louisiana." (*Id.*)

These representations are confirmed by Peter's ownership interest in real estate located at 900, 906, and 910 Royal Street in New Orleans, Louisiana. The 900 Royal Street address has been used as both a physical mailing address for governmental and non-governmental correspondence, tax certifications, and limited liability company statutory representation. (*See* Docs. 20-8, 20-15, 20-33, 20-41, 20-42, 20-48, 20-49.) Peter and Susan Hoffman's Balance Sheet indicates the value of the Hoffman's property in Louisiana to be over three million dollars. (Doc. 20-17 at 1.) Additionally, the Hoffman's monthly rental income from their Louisiana properties totals over nineteen thousand dollars a month. (*Id.* at 3.)

In addition to Peter's personal submission and benefits from the state of Louisiana, he has also engaged in substantial ongoing business with the state of Louisiana. *See Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) ("to confer general jurisdiction, a defendant must have a business presence in the forum state"). He is the principal owner and president of Seven

Arts Pictures, Inc. ("SAP")[1], the managing member of NOTD Investments LLC, the Louisiana limited liability company that produced the motion picture entitled Night of the Demons ("NOTD"). (Doc. 20-44, ¶ 1.) One hundred percent of NOTD was filmed in Louisiana. (Doc. 20-29.) Moreover, Louisiana expenses claimed by NOTD totaled approximately twelve million dollars. (Doc. 20-42 at 12.) Of these Louisiana expenses was Peter's fees of $625,000.00. (*Id.* at 14.) Peter also declared in a SAP press release that "Louisiana has proved to be a fantastic place for us to produce motion pictures . . . [and] we plan to continue producing pictures in Louisiana for a very long time." (Doc. 20-45.)

The Court concludes that Peter has not only had continuous contacts with the state of Louisiana, but has significantly benefitted from the state of Louisiana. Peter's varied personal and business contacts and benefits have continued over a number of years. *See Johnston v. Multidata Sys. Int'l Corp*, 523 F.3d 602, 610 (5th Cir. 2008) ("general jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed") (internal citations omitted). Thus, the Court finds that Peter's contacts are substantial, continuous and systematic such that suit against Peter does not offend constitutional standards.

---

[1]This Court has already found that is has jurisdiction over SAP. *See Seven Arts Pictures, Inc., et al v. Jonesfilm*, No. 09-4814, 2011 WL 2461701, at *4-6 (E.D. La., June 17, 2011).

This Court further finds that the fairness inquiry lends in favor of this Court having general personal jurisdiction over Peter. As noted previously, Peter has held himself out as a resident of the state of Louisiana. The burden upon him is minimal seeing as much of his business is done here and he owns residences here. Additionally, there is a great interest in having this conflict resolved here. Judgment Creditor Jonesfilm has obtained multiple judgments that, with accrued interest, currently total approximately one million dollars against Judgment Debtor Peter Hoffman and his affiliates. (Doc. 1, ¶ 1.) Jonesfilm brought this action against these Defendants in Louisiana in order to revoke, avoid and reform transfers of properties located in Louisiana which have allegedly wrongfully prevented Jonesfilm from collecting on its judgments. (*Id.*) Additionally, this is one of several lawsuits among these parties pending in the Eastern District of Louisiana. This Court has expended substantial time and resources adjudicating these various matters and judicial efficiency weighs in favor of exercising jurisdiction. Ultimately, an examination of the factors indicates that exercising general personal jurisdiction over Peter Hoffman comports with "traditional notions of fair play and substantial justice."

In conclusion, Peter has expended a variety of resources and derived numerous benefits from state of Louisiana. Thus, it is reasonable that his conduct and connection with the state of Louisiana are such that he should reasonably anticipate being haled to court here. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Consequently, this Court holds that the

assertion of general personal jurisdiction over Peter does not deprive him of his due process liberty interests and suit in this forum is proper.

### C. Seven Arts Film Entertainment Limited

SAFE argues that this Court has no personal jurisdiction over it. SAFE alleges that it is an English company with no conceivable activities in Louisiana. They assert that (1) Peter is neither the CEO nor managing director of SAFE; (2) SAFE's payments to Leeway for film production activities or receipt of payments show no contact with Louisiana, only a payment to or from a foreign bank account; and (3) that SAP is not an agent of SAFE, but is in fact an independent agent. (Doc. 14-1 at 8-9.) SAFE, however, does not provide any documentation in support of these arguments. (*See* Doc. 14.) Conversely, Jonesfilm contends that Louisiana has general jurisdiction over SAFE. In support Jonesfilm provides the following facts with corresponding documentation: (1) SAP, as SAFE's agent, holds ownership interests in, controls and operates on behalf of SAFE multiple Louisiana limited liability companies; (2) SAFE receives proceeds of films produced and distributed in Louisiana and benefits from millions of dollars of tax credits from the state of Louisiana; (3) Hoffman manages SAFE's business and signs documents as SAFE's officer; and (4) SAFE shares with SAP all personnel, operations, monies, logo, letterhead and other materials. (Doc. 20 at 20-25.)

Although SAFE may be a British Corporation with its offices and employees in London, the evidence provided to the Court indicates that this Court may obtain jurisdiction based not only on

SAFE's contacts with the forum, but also based on the contacts of SAP and Peter. As such, the motion to dismiss is denied.

"A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317)). Additionally, after an examination of the facts surrounding the operations of a parent and subsidiary, the Court may establish jurisdiction over one based on the contacts of the other. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 856 (5th Cir. 2000). "Ordinarily, where a parent and an affiliate or two affiliate companies maintain separate identities, jurisdiction over one does not provide a basis of jurisdiction over the other." *Oyuela v. Seacor Marine (Nigeria), Inc.*, 290 F.Supp.2d 713, 722 (E.D. La. 2003) (quoting *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925)). On the other hand, "[t]here may be instances in which the parent so dominates the subsidiary that they do not in reality constitute separate and distinct corporate entities . . ." *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990) (quoting *Hargrave v. Fireboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983); *Southmark Corp v. Life Investors, Inc.*, 851 F.2d 763 (5th Cir. 1988)). Ultimately, "the degree of control exercised by the parent company must be greater than that normally associated with common ownership and directorship" for jurisdiction to be established based on the alternate's

contacts with the forum state.  *Oyuela*, 290 F.Supp.2d at 722 (quoting *Kelly*, 213 F.3d at 856 (5th Cir. 2000)).

SAFE is a United Kingdom corporation which has been a wholly-owned subsidiary of Seven Arts Pictures PLC ("PLC").[2]  (Doc. 20-1, ¶5.)  Peter is an officer and controlling figure of SAFE.  (Doc. 1, ¶9; *see also* Doc. 20-21 at 11.)  SAFE is currently a defendant in another action pending in the Eastern District of Louisiana with similar parties and regarding the same underlying issues.  In that matter, SAFE consented to this Court's jurisdiction and was ordered in contempt by the Court.  (*See* Docs. 20-3, 20-26.)

PLC is a United Kingdom corporation of which Peter has been and is CEO, director, principal shareholder, and controlling figure.  (Doc. 20-1, ¶5.)  PLC, at all pertinent times, has been a public company filing with the United States Securities and Exchange Commission ("SEC").  (*Id.*)  SAP is a Nevada corporation of which Peter has been and is the Chief Executive Officer, director and principal shareholder.  (*Id.*)

PLC's SEC filings state, in pertinent part, that:

[p]ursuant to an inter Group agreement, Seven Arts Pictures Inc. also, from time to time, holds ownership of limited liability corporations in the Untied States, with all distribution rights and profits thereof being due to Seven Arts Filmed Entertainment Limited.  In addition, they also provide other services for Seven Arts Pictures Plc and Seven Arts Filmed Entertainment Limited at no fee other than Mr. Hoffman's salary . . ., all of which are reflected in the financial statements of Seven Arts Filmed Entertainment Limited.

---

[2]PLC filed a Notice of Bankruptcy on June 25, 2012.  (Doc. 52.)  The Court granted a stay as to all proceedings against PLC.  (*See* Docs. 54, 63.)

(Doc. 20-47 at 16.)  Of these United States limited liability companies are numerous Louisiana limited liability companies including Seven Arts Filmed Entertainment Louisiana LLC, Seven Arts Pictures Louisiana, LLC, Seven Arts Pictures Louisiana (Equicap) LLC, Seven Arts Post LLC, and Esplanade Pictures LLC.  (Doc. 20-1, ¶57.)  Thus, these Louisiana limited liability companies' ownership, distribution rights, and profits are due to SAFE.  (*Id.*)  These companies are all engaged in the production and distribution of the motion picture business in Louisiana and in the redevelopment of the 807 Esplanade film production and post-production facility.  (*Id.* at ¶¶ 64, 66.)  As such, this Court finds that SAFE has sufficient and continuous contacts and benefits from the state of Louisiana such that jurisdiction is proper.

In addition to SAFE's own contacts and benefits associated with the state of Louisiana, it is evident to this Court that PLC-SAP-SAFE relationship is similar to that parent-subsidiary company relationship found in *Oyuela*.  *See Oyuela,* 290 F.Supp.2d at 722-723 (where the affiliate had no administrative personnel of its own, resolved day-to-day operational issues via other affiliates and the parent provided substantial assistance it does not offend due process to extend personal jurisdiction over a foreign corporation).  Consequently, it is appropriate to consider the contacts that SAP and other Seven Arts affiliates have with the forum to determine whether jurisdiction exists.  *Id.* at 723.  Additionally, the contacts of Peter, as SAFE's controlling manager, may be considered in the jurisdictional inquiry.

As noted previously, this Court has already found that is has jurisdiction over SAP. *See Seven Arts Pictures, Inc., et al v. Jonesfilm*, No. 09-4814, 2011 WL 2461701, at *4-6 (E.D. La., June 17, 2011). SAP is party to an inter-group agreement by which SAP serves as an agent for SAFE and SAFE's properties and businesses in Louisiana. (Doc. 20-1, ¶64.) In addition to SAP holding ownership interests, controlling, and operating on behalf of SAFE multiple Louisiana limited liability companies, SAFE also shares with SAP all personnel, operations, monies, logo, letterhead and other materials without any line of demarcation. (*Id.*) Through common officers, shared offices, logo, letterhead, email addresses and bank accounts SAP and Peter serve as agents for SAFE in Louisiana. (*Id.* at ¶62.) Additionally, through these shared things, SAFE and the other Seven Arts companies are part of the larger Seven Arts group engaged in the production and distribution of films in Louisiana and the redevelopment of property located in Louisiana. (*Id.*) This Court further notes that the same counsel represents PLC, SAP and SAFE in these proceedings.

Furthermore, this Court has also found that it has jurisdiction over Peter Hoffman. *See Infra*. I.A. PLC's SEC filings reveal that SAP has an employment agreement with Peter which secures Peter's services as their subsidiaries CEO. (Doc. 20-47 at 12.) In connection with that agreement, Peter has an annual salary of $500,000 per year plus bonuses, expenses and a signing option. (Id.) Many times Peter's compensation and expenses have been paid by money transfers from SAFE and other Seven Arts companies through Peter and Susan Hoffman's real estate company, Leeway. (Doc. 20-1, ¶¶ 60, 65.)

In the end, this Court finds that due to SAFE's own contacts and because a presence is maintained in Louisiana by SAFE's affiliates, including SAP and other Seven Arts Louisiana limited liability companies, and Peter Hoffman, its agent and controlling officer, the constitutional requirements of due process are clearly satisfied. As such, this Court has proper jurisdiction over SAFE. Defendant's Motion to Dismiss is denied.

## II. Motions to Dismiss as a Delictual Action Outside the Limitations Period

Before the Court are two Motions to Dismiss as a Delictual Action Outside the Limitations Period. The first Motion was filed by SAP on October 13, 2011. (Doc. 15.) The second Motion was filed by Leeway Properties and Susan Hoffman on March 14, 2012. (Doc. 26.) For the following reasons the Motions to Dismiss are denied.

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v.*

*U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009).  The Court need not, however, accept as true legal conclusions couched as factual allegations.  *Iqbal*, 129 S.Ct. at 1949–50.

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.  *Id*.  The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57.  If it is apparent from the face of the complaint that an insurmountable bar to relief exists, and the plaintiff is not entitled to relief, the court must dismiss the claim.  *Jones v. Bock,* 549 U.S. 199, 215 (2007).

B. <u>SAP</u>

Defendant SAP argues that all six claims for relief in Plaintiff's Complaint are barred by Louisiana Civil Code article 3492.  (Doc. 15-1 at 5.)  SAP alleges that all claims are "in delictu" and thereby subject to the liberative prescription period of one year.  (*Id.*)  SAP concludes that on the face of the Complaint it is clear that the damage or injury claimed by Jonesfilm was sustained more than one year prior to the filing of the Complaint in August of 2011 because the damage or injury is for failure to collect the California Judgments which were entered in 2006 and 2008 respectively. (*Id.* at 6-7.)  Jonesfilm asserts that SAP only has standing to move to dismiss the two claims in which SAP is named.  (Doc. 19 at 1.)  Jonesfilm further notes that because their claims are revocatory and oblique actions under Louisiana law then they are not subject to the prescriptive period for a "in delictu" action, but are rather subject to longer statutory prescriptive periods.  (*Id.* at 2.)  Finally,

Jonesfilm contends that even if the Court finds that the one year prescription period under Louisiana Civil Code article 3492 applies, its claims are timely as Jonesfilm filed its action within a year of its receipt of information disclosing those claims previously concealed from and unknown to Jonesfilm.  (*Id.*)

The Court first notes that it will only consider Plaintiffs first claim for relief and fourth claim for relief as these are the only two claims brought against SAP.  This Court finds that neither Plaintiff's claim for revocatory action, Plaintiff's first claim, nor its claim for oblique action, Plaintiff's fourth claim, are delictual actions prohibited by Louisiana Civil Code article 3492. Instead, the Court finds that they are governed by Louisiana Civil Code article 2041 and are therefore not prescribed.  Thus, Defendant's Motion to Dismiss is denied.

The revocatory action is "[d]erived from Roman law, [and] is the civil law analogue to the common law suit to set aside a fraudulent conveyance."  La. Civ. Code Ann. art. 2036, comment (c) (2012).  Specifically, "[a]n obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency."  *Id.*

An oblique action allows the creditor to benefit from an obligation to which he is not a party.  La. Civ. Code. Ann. art. 2044, comment (c) (2012).  Thus, "[i]f an obligor causes or increases his insolvency by failing to exercise a right, the obligee may exercise it himself. . . . [f]or that

purpose, the obligee must join in the suit his obligor and the third person against whom the right is asserted."  *Id.*

"Article 2041 is the specific prescriptive article which governs the prescription of actions brought under Chapter 12, including both oblique and revocatory actions."  *Nicholason Mgmt. & Consultants, Inc. v. Bergman*, 96-CA-0557, (La. App. 4 Cir. 9/25/96); 681 So.2d 471, 476.  Article 2041 provides that these actions must be "[b]rought within one year from the time [the obligee] learned or should have learned of the act, or the result of the failure to act, of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result."  La. Civ. Code Ann. art. 2041 (2012).  The Louisiana Supreme Court explains that article 2041 essentially provides for two possible prescriptive dates and one peremptive date for bringing an action. *London Towne Condo. Homeowner's Ass'n v. London Towne Co.*, 2006-CC-401, pp. 7-8 (La. 10/17/06); 939 So.2d 1227, 1233.  Ultimately, the prescriptive period is one year from the date the obligee learned of the harm but never more than three years from the act of the obligor.  This approach protects the obligee from "a devious obligor [that] could prejudice his obligee's claim and conceal his actions for a year, thereby escaping liability altogether" while also protecting "the security of transactions."  La. Civ. Code. Ann. art. 2041, comment (a) (2012).

In claims one and four Jonesfilm seeks to annul the transfer of $394,964.59 from SAP to Leeway and the transfer of approximately two million dollars transferred from SAP to Leeway to pay for French Quarter Properties owned by Leeway and/or Susan Hoffman.  (Doc. 1, ¶¶ 46, 64-65.)

Jonesfilm alleges that these transfers caused or increased the insolvency of SAP. (*Id.* at ¶¶ 47, 62.) Prescription will begin to run from the date that Jonesfilm learned or should have learned of these acts, not the date that they knew the act caused or increased SAP's insolvency. *See London Towne Condo. Homeowner's Ass'n*, 939 So.2d at 1234. Jonesfilm asserts that prescription has not run because they received certain post-judgment discovery responses from SAP on August 26, 2010, within one year of their Complaint, that revealed to Jonesfilm that SAP made numerous transfers to Leeway from June 2006 through August 2010. (Doc. 19 at 6-7; *see also* Doc. 1, ¶¶ 30, 36.)

"When considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims." *Maloney Gaming Management, L.L.C. v. St. Tammany Parish*, 456 Fed. Appx. 336, 340-341 (5th Cir. 2011). While not specifically referencing these discovery responses, Plaintiff's Complaint highlights much of its substance. (*See* Doc. 1.) Additionally, these discovery responses are attached to Plaintiff's Opposition to Motion to Dismiss and specifically referenced therein. (*See* Doc. 19 at 2; Doc. 20-1; Doc. 20-21; Doc. 20-22.) Additionally, it is the information in these discovery responses that presumably led Jonesfilm to file suit against these Defendants. Thus, this Court finds that it may depend upon these discovery responses in analyzing Defendants' Motions to Dismiss.

"Where an obligee is seeking annul the act of an obligor, the relevant date is when the obligor learned or should have learned of the act." *London Towne Condo. Homeowner's Ass'n*, 939

So.2d at 1233.  It is clear to this Court that the discovery responses provided on or after August 26, 2010[3] to Jonesfilm revealed the acts Jonesfilm seeks to annul.  August 26, 2010 is clearly within one year of August 12, 2011 and is thereby in compliance with the one year prescriptive period provided by Louisiana Civil Code article 2041.  While it may have been possible for Jonesfilm to learn of the acts prior to August 26, 2010 it is apparent from the face of Plaintiff's Complaint that Jonesfilm did not know of these transactions because of Defendants own actions.  (*See* Doc. 1, ¶¶ 26-42.)  As such, the Court finds that Plaintiff's first and fourth claims for relief, e.g. Plaintiff's claims against SAP, are not prescribed.  Accordingly, SAP's Motion to Dismiss is denied.

### C. <u>Susan Hoffman and Leeway Properties</u>

Susan and Leeway incorporate all of SAP's arguments from its Motion to Dismiss.  (Doc. 26.; *see also* II.B. *infra.*)  Jonesfilm opposes Susan and Leeway's Motion and asserts that (1) the Complaint was served on Leeway and Susan more than six months prior to the filing of their Motion to Dismiss, and having never filed or served an answer, they are deemed to have admitted the allegations in the Complaint; (2) SAP only had standing to assert opposition to two of Plaintiff's claims; (3) the SAP/Leeway/Susan arguments fail because they are fact-based, however are not support by affidavit or other evidence; (4) the Defendants' arguments fail because they mischaracterize Jonesfilm claims as based on conversion; (5) even if Jonesfilm's claims were subject

---

[3]The responses are executed on August 26, 2010.  Thus, it is unclear if Jonesfilm actually received them on this date or at a later date.

to Louisiana Civil Code article 3492 their claims are timely as Jonesfilm filed this action within a year of its receipt of information disclosing those claims previously concealed from and unknown to Jonesfilm. (Doc. 30 at 2-3.)

Although the Court would find that the substantive allegations included in Defendants' Motion are not sufficient to dismiss Plaintiff's claims, it declines to analyze the merits of those allegations due to the untimeliness of its filing. As such, Defendants' Susan Hoffman and Leeway Properties' Motion to Dismiss is denied.

The record shows that Plaintiff's Complaint was filed on August 12, 2011. (Doc. 1.) Leeway Properties was served on August 17, 2011 and its Answer was due on September 7, 2011. (Doc. 6.) Leeway subsequently filed a Motion for Extension of Time to Answer the Complaint on September 12, 2011 (Doc. 11) which was granted by the Court on October 17, 2011 (Doc. 17). The extension provided Leeway until November 9, 2011 to file an Answer. (Doc. 17.) Susan Hoffman was served on September 28, 2011 and her Answer was due on October 19, 2011. (Doc. 13.)

On December 12, 2011 Leeway and Susan filed a Motion to Dismiss as Outside the One Year Prescriptive Period. (Doc. 22.) This was marked deficient by the Clerk of Court. (*Id.*) The clerk noted that the document must be refiled in its entirety within seven calendar days or it would otherwise be stricken by the court. Specifically, the clerk required Leeway and Susan to remedy the deficient filing by December 20, 2011. On January 5, 2012 the clerk Noticed that Leeway and Susan's deficient document was overdue and the Motion was terminated. Leeway and Susan

subsequently filed its Motion to Dismiss as a Delictual Action brought Outside the Limitations Period on March 14, 2012. (Doc. 26.)

Federal Rule of Civil Procedure 12(a)(1) requires that "a defendant must serve an answer within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1) (West 2012). A party must file a Rule 12(b) motion before filing an answer. *See* Fed. R. Civ. P. 12(b) (West 2012). Thus, a party ordinarily has twenty one days to file an answer or a Rule 12(b) motion. On the other hand, the court may grant the party an extension to file responsive pleadings. *See* Fed. R. Civ. P. 6(b) (West 2012). Ultimately,

> [t]he court may, for good cause, extend the time:
> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
> B) on motion made after the time has expired if the party failed to act because of excusable neglect.

*Id.*

The Motion to Dismiss filed by Susan and Leeway falls grossly outside of the twenty one day time period as required by the Federal Rules of Civil Procedure. Susan had until October 19, 2011 and Leeway until had until November 9, 2011 to file either a 12(b) motion or an Answer. Even the deficient first-filed Motion to Dismiss was, at a minimum, over a month beyond these deadlines. Additionally, the Court finds that Defendant Leeway's failure to comply with three separate filing deadlines, and Defendant Susan's failure to acknowledge the Complaint at all for almost six months supports its position that there is neither good cause nor excusable neglect to justify entertaining

such a late-filed motion.  Accordingly, Defendants Leeway Properties and Susan Hoffman's Motion to Dismiss is denied.

**CONCLUSION**

For the foregoing reasons, the Motion to Dismiss for Lack of Personal Jurisdiction by Peter Hoffman and Seven Arts Filmed Entertainment Limited (Doc. 14) is DENIED; the Motion to Dismiss as a Delictual Action Brought Outside the Limitations Period by Seven Arts Pictures, Inc. (Doc. 15) is DENIED; and the Motion to Dismiss as a Delictual Action Brought Outside the Limitations Period by Susan H. Hoffman and Leeway Properties, Inc. (Doc. 26) is DENIED.

New Orleans, Louisiana this 20th day of September, 2012.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT COURT JUDGE**